IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OR ARKANSAS
FORT SMITH DIVISION

ISABEL TORRES                                                                    PLAINTIFF

v.                               CIVIL NO. 12-2312

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                   DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Isabel Torres, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on December 3, 2010, alleging an inability to work since May 1, 2006, due to a learning disability and being a slow learner. (Tr. 133,139, 164). For DIB purposes, Plaintiff maintained insured status through June

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

AO72A
(Rev. 8/82)

30, 2008. (Tr. 12, 146). An administrative hearing was held on November 17, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 35-81).

By written decision dated December 2, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.14). Specifically, the ALJ found Plaintiff had the following severe impairments: mild mental retardation. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform work in which interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote with few variables and use of little judgment; and the supervision required is simple, direct and concrete.

(Tr. 16). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a housekeeper, an assembler, and a machine tender. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 25, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 13,14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's decision. The Court will summarize the relevant medical evidence during the time period in question.

**II.     Evidence Presented:**

At the administrative hearing held before the ALJ on November 17, 2011, Plaintiff, who was twenty-six year of age, testified that she had a high school education. (Tr. 38). Plaintiff testified that with the exception of two classes, she took resource classes.

The pertinent medical evidence during the relevant time period reflects the following. On September 13, 2006, Plaintiff underwent a psychometric evaluation performed by Dr. Patricia J. Walz. (Tr. 243-246). Plaintiff reported that she completed high school, and that she was a great student. Plaintiff reported that she also took resource classes. Plaintiff reported that she could read "pretty well" and thought that she could read most of the words in a newspaper. Plaintiff reported that she thought she could fill out a job application, but that she needed her father's or brother's help sometimes. Plaintiff reported that she would sometimes know what change she should get back when she purchased something in cash. Dr. Walz noted that Plaintiff's father reported Plaintiff did not understand money at all. Plaintiff reported no chronic physical illness. Plaintiff's father reported that Plaintiff had seizures as a child and took medication until 1999. He reported that Plaintiff had received disability based upon her seizures until she turned 18. Plaintiff reported that she started taking medication for the seizures when she was five or six, and that she quit taking the medicine a couple of years later because she no longer experienced seizures.

At the time of the evaluation, Dr. Walz noted that Plaintiff reported that she did not need to be reminded to bathe, but that Plaintiff's father reported Plaintiff needed to be reminded to do chores. Plaintiff reported that she sometimes cooked. Plaintiff's father reported that he and his wife did not really trust Plaintiff to cook. Plaintiff's father reported that Plaintiff had a driver's license but that he did not trust Plaintiff to drive because she could not read the signs. Plaintiff's

-3-

father reported that because they lived in a small town he sent Plaintiff to the store to pick up milk, but that Plaintiff did not drive to Fort Smith. Plaintiff reported to pass the time she watched television and visited with friends. Plaintiff reported that she liked to go for walks, and play tennis and volleyball. Plaintiff reported that her energy level was good, and that she had no problems with memory and concentration. Plaintiff reported that she had friends with whom she went to the movies or the mall. Plaintiff reported that she sometimes played computer games with one of her friends, but noted that this friend liked hard games that Plaintiff could not play.

With regard to test scores, Dr. Walz noted Plaintiff's Full Scale IQ was 65. Dr. Walz noted that Plaintiff demonstrated intellectual functioning in the extremely low range. Dr. Walz opined that Plaintiff qualified for a diagnosis of mild mental retardation based on developmental learning problems, IQ scores, and impairment in academic functioning, independent living, self-direction, and work skills.

On January 19, 2010, Plaintiff complained of back pain. (Tr. 273). Plaintiff underwent x-rays of the lumbar spine that revealed no abnormality. (Tr. 274).

On January 22, 2010, Plaintiff complained of experiencing dizziness if she did not get enough sleep. (Tr. 247). Plaintiff was not on any medications. Treatment notes indicated that Plaintiff needed a prescription refill for her menstrual cycle. Dr. Robert L. Wilson diagnosed Plaintiff with ataxia. Dr. Wilson also ordered lab work which was performed on February 5, 2010. (Tr. 248).

On January 3, 2011, Dr. Winston Brown, a non-examining medical consultant, completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed

instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain ordinary routine without special supervision; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others. (Tr. 254-257). Dr. Winston made the following additional comments:

> The claimant is able to perform work where interpersonal contact incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgement; supervision required is simple, direct and concrete. (Unskilled).

(Tr. 256). On the same date, Dr. Winston completed a psychiatric review technique form indicating Plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration persistence or pace; and had no episodes of decompensation. (Tr. 258-270). On March 29, 2011, after reviewing additional evidence Dr. Sheri L. Simon affirmed Dr. Winston's January 3, 2011, opinion. (Tr. 280).

On February 18, 2011, Plaintiff was seen by Dr. Wilson for a follow-up appointment. (Tr. 272). Plaintiff reported that her back pain was better. Plaintiff was noted to have a small nodule near her right areola. The treatment notes indicated Plaintiff had been exercising and going to the gym.

On February 23, 2011, the knot on Plaintiff's right breast was evaluated by Dr. John C. Smith. (Tr. 281). Dr. Smith removed tissue and determined it to be a sebaceous cyst with no skin connection.

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

### IV. Discussion:

Plaintiff argues the following issues in this appeal: 1) the ALJ failed to develop the record as to Plaintiff's RFC; and 2) the ALJ erred in assessing Plaintiff's credibility.

#### A. Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2008. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of May 1, 2006, her alleged onset date of

disability, through June 30, 2008, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

**B.     Plaintiff's Impairments:**

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature. See Brown v. Yuckert, 482 U.S. 137, 153-54 (1987).  The claimant, however, has the burden of proof of showing she suffers from a medically-severe impairment at Step Two.  See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

While the ALJ found that Plaintiff's alleged ataxia, dizziness, back pain, and obesity were non-severe, the ALJ clearly considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006) (where ALJ finds at least one "severe" impairment and proceeds to assess

-8-

claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").  Thus, the ALJ's finding that Plaintiff's alleged exertional impairments were not "severe" impairments does not constitute reversible error.

**C.    RFC Assessment:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

AO72A
(Rev. 8/82)

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform work at all exertional levels with some nonexertional limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Plaintiff's capacity to perform work at this level is also supported by the fact that the medical evidence does not indicate that Plaintiff's examining physicians placed restrictions on her activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Accordingly, the Court finds there is substantial evidence of record to support the ALJ's RFC findings.

### D. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in her brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In making a credibility determination, the ALJ noted that Plaintiff reported in a Function Report dated December 20, 2010, that she was able to help feed and take care of three dogs; to take care of her personal needs; to prepare simple meals; to do household chores, with encouragement; to watch television, play games, and use the computer; and to spend time with other and attend church. (Tr. 194-201). Plaintiff also reported to Dr. Walz in September of 2006 that she was able to watch television, play games, go to movies, and go to the mall with friends.

The ALJ also addressed some inconsistencies in the record that directly impact credibility. A review of the record revealed that while Plaintiff indicated that she was too scared to drive alone and Plaintiff's father indicated Plaintiff could not drive alone due to both an inability to read signs, and fear that Plaintiff would get lost, Plaintiff's mother testified that Plaintiff was able to drive alone to the grocery store two to three times a week to pick up a few items. (Tr. 60, 73, 178,197). Both Plaintiff and Plaintiff's father also indicated that Plaintiff did not understand money; however Plaintiff's mother indicated that Plaintiff could purchase items at the store and brought home the correct change. (Tr. 73, 179, 197).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

AO72A
(Rev. 8/82)

### E. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that during the relevant time period Plaintiff's impairments did not preclude her from performing work as a housekeeper, an assembler, and a machine tender. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### F. Fully and Fairly Develop the Record:

An ALJ is required to develop the record fully and fairly. See Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000) (ALJ must order consultative examination only when it is necessary for an informed decision). After reviewing the administrative record, it is clear that the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

## IV. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our**

-12-

**report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of January, 2014.

                                                /s/ *Erin L. Setser*
                                              HON. ERIN L. SETSER
                                              UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**